IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MICHAEL DAY, et al.,  )
    Plaintiffs and Counter  )
      Defendants,  )
          )
v.  )    1:12cv669 (LMB/IDD)
          )
MOUNT VERNON FIRE INSURANCE  )
  COMPANY,  )
    Defendant and Counter  )
      Claimant.  )

JAN 2 3 2013

## MEMORANDUM OPINION

This civil action arises out of cross claims for declaratory judgment regarding the scope of an insurance policy. Plaintiffs seek a declaration that defendant Mount Vernon Fire Insurance Company ("Mt. Vernon Insurance") is obligated, under the insurance policy it issued to The Locker Room, LLC, Jessie Litchfield, Jessica Pagonis, George Pagonis, and Teresa Plaza (collectively, the "Locker Room parties"), to cover plaintiff Michael Day's ("Day") personal injury suit against them. Mt. Vernon Insurance seeks a declaration that it is not so obligated. Before the Court are Mt. Vernon Insurance's Motion for Summary Judgment [Dkt. No. 23], which the parties have fully briefed, and the defendant's Motion for Default Judgment [Dkt. No. 43]. For the reasons that follow, the defendant's motions will be granted and final judgment will be entered in favor of Mt. Vernon Insurance.

## I. BACKGROUND

Day filed a personal injury suit against the Locker Room parties in a case captioned <u>Day v. The Wing Fanatic Sports Theatre and Grill, et al.</u>, No. CL 10-5647, in Prince William County Circuit Court. <u>See</u> Def.'s Mem. ¶ 1, at 2; Notice of Removal [Dkt. No. 1] Ex. 2 ("Notice of Filing of Removal"), attach. B ("Underlying Complaint"). In that suit, he alleges that on September 22, 2008, while he was playing in a billiards tournament at the Wing Fanatic Sports Theatre and Grill, also known as the Locker Room, LLC, "a fight occurred in which [Day] was struck on his head and was stabbed/cut with a knife." Underlying Compl. ¶ 1. Day seeks $500,000.00 along with costs and interest on three counts: "Negligence" (Count I), "Negligence Per Se" (Count II), and "Breach of Contract -- Third Party Beneficiary" (Count III). <u>Id.</u> ¶¶ 2-18; <u>see also</u> Def.'s Mem. ¶ 3, at 3.

All three claims are based on a premises liability theory. Count I alleges that the Locker Room parties, as "owners, occupiers, and/or operators of the relevant premises . . . had a duty to exercise ordinary care to inspect, maintain, monitor, operate, patrol, secure and/or supervise the premises in a safe condition and environment for the use of the plaintiff and others similarly situated." Underlying Compl. ¶ 3. Moreover, because the Locker Room parties "invited business customers such

2

as [Day] onto the premises to play pool, socialize, eat and drink while" alcohol was served, they had various duties to "operate the business in a reasonable and careful manner so as to ensure the premises would be safe for invitees such as [Day]." Id. ¶ 4. Allegedly, those duties were breached and Day was injured as a result. Id. ¶¶ 5-6.

Count II alleges that the Locker Room parties "failed to maintain the premises in accordance with the standards contained" in various building codes, which included "the requirement to maintain the premises in a safe condition for invitees, to limit numbers of patrons on the premises, to warn invitees about unsafe conditions, to keep the premises free from dangerous conditions, and/or to refuse to provide alcohol to intoxicated persons." Id. ¶¶ 8-9. Moreover, Day alleges that he "was in a class of people that these codes were intended to benefit and protect," that his injuries "were the kind of harm for which these codes were designed to protect," and that therefore the Locker Room parties' failure to act "in accordance with the standards contained in these codes is negligence per se and is the direct and proximate cause of the plaintiff's injuries." Id. ¶¶ 10-12.

Finally, Count III alleges that the contract between the Locker Room parties and the owner of the land on which the premises were located included an agreement "to operate and

maintain the property so that it would be safe for all invitees," making it clear that Day was intended to be a third party beneficiary of the contract. Id. ¶¶ 14-16. Day further alleges that the Locker Room parties breached that contract and injured Day as a result. Id. ¶ 18. These allegations essentially amount to a claim that the Locker Room parties were negligent in performing their contractual obligations, thereby breaching the contract and causing injury to third party beneficiaries.

The insurance policy that covered the Locker Room at the time of the incident provided coverage from July 17, 2008, until December 15, 2008. Counterclaim [Dkt. No. 5], Ex. A ("the policy"); Stipulation of Uncontested Facts [Dkt. No. 20] ¶ 1. The policy includes an "'Assault' or 'Battery' Exclusion," which provides:

> This insurance does not apply to:
>
> Any claim, demand or "suit" based on "assault" or "battery", or out of any act or omission in connection with the prevention or suppression of any "assault" or "battery", including the use of reasonable force to protect persons or property, whether caused by or at the instigation or direction of an insured, its "employees," agents, officers or directors, patrons or any other person. Further, no coverage is provided for any claim, demand or suit in which the underlying operative facts constitute "assault" or "battery."
>
> This exclusion applies to all "bodily injury," or "property damage" sustained by any person, including emotional distress and mental anguish, arising out of "assault" or "battery" whether alleged, threatened or

actual including but not limited to "assault" or "battery" arising out of or caused in whole or in part by negligence or other wrongdoing with respect to:

a. Hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible; or
b. Investigation or reporting any assault or battery to the proper authorities; or
c. The failure to so report or the failure to protect any person while that person was in the care, custody or control of the insured, its "employees," agents, officers or directors; or
d. Any other negligent action.

"Assault" means the threat or use of force on another that causes that person to have apprehension of imminent harmful or offensive contact, whether or not the threat or use of force is alleged to be negligent, intentional or criminal in nature.

"Battery" means negligent or intentional wrongful physical contact with another without consent that results in physical or emotional injury.

Id. at L-461 (11-07) ("the exclusion").

Day filed the instant civil action against the Locker Room parties[1] in the Prince William County Circuit Court, seeking a declaratory judgment that the policy covers his personal injury suit against the Locker Room parties. See Notice of Removal [Dkt. No. 1], Ex. 1. On June 19, 2012, Mt. Vernon Insurance removed the case to federal court and simultaneously moved to

---

[1] Jessica Litchfield, originally included as a co-plaintiff and counter defendant, was not a proper party to this civil action because no person by that name is or was associated with The Locker Room, LLC. See Notice [Dkt. No. 40]. Accordingly, Jessica Litchfield has been dismissed from this civil action both as a plaintiff and as a counter defendant. See Dkt. Nos. 41, 42.

5

realign certain parties for purposes of jurisdiction, arguing that because this action was for a declaratory judgment concerning coverage, the Locker Room parties' interests were aligned with Day's and they were more appropriately considered plaintiffs. See Notice of Removal [Dkt. No. 1]; Mot. to Realign Certain Parties for Purposes of Jurisdiction ("Motion to Realign") [Dkt. No. 3]. Mt. Vernon Insurance's Motion to Realign was granted on August 3, 2012. Dkt. No. 15. Mt. Vernon Insurance also counterclaimed against Day and the Locker Room parties, seeking a declaration that the above-described exclusion relieved it of any obligation to cover the Locker Room parties for Day's personal injury suit. Dkt. No. 5.

Mt. Vernon Insurance filed the instant Motion for Summary Judgment on November 9, 2012. Dkt. No. 23. Day filed an Objection on November 29, 2012, and filed the Memorandum in support of that objection on December 3, 2012; Mt. Vernon Insurance filed its Reply on December 10, 2012. Dkt. Nos. 31, 33, 34. Proper Roseboro notices were filed and sent to the Locker Room parties on December 18, 2012. Dkt. No. 35. Defaults were entered against the Locker Room parties as to Mt. Vernon Insurance's counterclaim on December 27, 2012, and Mt. Vernon Insurance filed the instant Motion for Default Judgment on January 16, 2013.

The issues having been fully briefed, and proper notice having been provided to the Locker Room parties, the motions are now ripe for review.

## II. DISCUSSION

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the Court must view the record "in the light most favorable to the nonmoving party," Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 324 (4th Cir. 2012), the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Am. Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). Rather, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (internal quotation mark omitted).

There are no disputed issues of fact in this civil action. Day does not dispute any of the facts listed by Mt. Vernon Insurance and he has offered no additional facts, indicating

7

only that he believes the entire insurance policy document and not only the exclusion should be considered and that the allegations in his Complaint are incorporated by reference. See Day's Mem. in Supp. of His Objection to Def. Mount Vernon Fire Insurance Company's Mot. for Summ. J. ("Day's Mem.") [Dkt. No. 33], at 2 ("The plaintiff accepts the defendant's statement of undisputed material facts."). Accordingly, the disposition of the case turns entirely on a legal question, and the action is ripe for summary judgment.

### 2. Default Judgment

Under Fed. R. Civ. P. 55, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," default shall be entered against them by the clerk. Fed. R. Civ. P. 55(a). By defaulting, a counter defendant "admits the [counter claimant]'s well-pleaded allegations of fact." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). A court deciding whether to enter default judgment must therefore "determine whether the well-pleaded allegations . . . support the relief sought." Id.

A federal court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for

delay." Fed. R. Civ. P. 54(b). The prevention of "logically inconsistent judgments in the same action and factually meritless default judgments provide[s] just reason." <u>Phx. Renovation Corp. v. Gulf Coast Software, Inc.</u>, 197 F.R.D. 580, 582 (E.D. Va. 2000); see also <u>Jefferson v. Briner, Inc.</u>, 461 F. Supp. 2d 430, 434 (E.D. Va. 2006). In such circumstances, the appropriate course is to consider a motion for default judgment against non-appearing counter defendants only after the action has been decided on the merits as to appearing counter defendants. Cf. <u>Phx. Renovation</u>, 197 F.R.D. at 584, <u>Jefferson</u>, 461 F. Supp. 2d at 434.

### B. **Legal Background**

A federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state. See <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Under Virginia law, "(1) the law of the place of the wrong determines the substantive issues of tort liability, and (2) generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage." <u>Buchanan v. Doe</u>, 431 S.E.2d 289, 291 (Va. 1993). The policy was issued and delivered in Virginia; accordingly, Virginia law applies.

Under Virginia law, there is a "well established rule that when the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather,

they give the language its plain and ordinary meaning and enforce the policy as written." P'ship Umbrella, Inc. v. Fed. Ins. Co., 530 S.E.2d 154, 160 (Va. 2000). In interpreting the text, "[e]ach phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." Floyd v. N. Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993) (quoting Suggs v. Life Ins. Co. of Va., 147 S.E.2d 707, 710 (Va. 1966)) (internal quotation marks omitted). Although courts must "construe[] an insurance policy's terms and conditions from the four corners of the document itself," if "language in the policy 'can be understood to have more than one meaning,' it is construed 'in favor of coverage and against the insurer.'" Great Am. Ins. Co. v. Bogley, 837 F. Supp. 2d 570, 573 (E.D. Va. 2011) (quoting Va. Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009)). An "ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time," but "[t]he mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous." Pocahontas Mining LLC v. CNX Gas Co., LLC, 666 S.E.2d 527, 531 (Va. 2008).

The "eight corners" rule provides that "the court must review the policy language to determine the terms of the coverage at issue and compare [those terms] with the allegations in the underlying lawsuit to determine whether any of the claims asserted are covered by the policy." Downtown Norfolk Entm't, Inc. v. Penn-Am. Ins. Co., 660 F. Supp. 2d 669, 673 (E.D. Va. 2008) (quoting Penn-Am. Ins. Co. v. Mapp, 461 F. Supp. 2d 442, 456 (E.D. Va. 2006)). An insurance company "is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." Id. at 672 (quoting Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995)).

As for exclusion clauses specifically, "language in an insurance policy purporting to exclude coverage for certain events will be construed most strongly against the insurer." Johnson v. Ins. Co. of N. Am., 350 S.E.2d 616, 619 (Va. 1986). Although "[r]easonable policy exclusions not in conflict with statute will be enforced; to be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope." Floyd v. N. Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993). Moreover, "the burden is on the insurer to prove that an exclusion applies." Id.

## C. Analysis

Although the specific causes of action in the Underlying Complaint are not for assault or battery but are based on premises liability (Counts I & II) and breach of contract to keep the premises safe (Count III), all of Day's injuries arise from his being "struck on his head" and "stabbed/cut with a knife." Underlying Compl. ¶ 1. These allegations clearly fall under the exclusion's definition of a battery, which is the "negligent or wrongful physical contact with another without consent that results in physical or emotional injury." Exclusion at L-461 (11-07).

The exclusion is not ambiguous, and it includes no fewer than three statements indicating that this action is not covered by the insurance policy:

1. "This insurance does not apply to: Any claim, demand or 'suit' based on 'assault' or 'battery', or <u>out of any act or omission in connection with the prevention or suppression</u> of any 'assault' or 'battery,'" . . . .

2. "[N]o coverage is provided for any claim, demand or suit in which the underlying operative facts constitute 'assault' or 'battery.'"

3. "This exclusion applies to all 'bodily injury', or 'property damage' sustained by any person . . . arising out of 'assault' or 'battery' whether alleged, threatened or actual including but not limited to 'assault' or 'battery' arising out of or caused in whole or part by negligence or other wrongdoing with respect to . . . any other negligent action."

<u>Id.</u> Despite these statements, Day contends that the exclusion does not cover batteries of patrons instigated by other patrons,

12

or at least that there is ambiguity over whether such legal obligations are covered. Day's Mem. at 3-4. Day points specifically at the following language:

> This exclusion applies to all "bodily injury", or "property damage" sustained by any person, . . . arising out of "assault" or "battery" whether alleged, threatened or actual including but not limited to "assault" or "battery" arising out of or caused in whole or in part by negligence or other wrongdoing with respect to:
>
> a. hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible . . . .

Exclusion at L-461 (11-07). Because Day is not claiming damages due to negligent "hiring, placement, employment, training, supervision or retention" of a Locker Room employee, he argues that "[t]he exclusionary clause is not applicable." Day's Mem. at 4. He interprets the exclusion as extending only to "claims in which a 'bouncer' employee in a bar injures a patron in a bar or other such similar scenario (i.e. a person for which the insured is legally responsible injures a patron)." Id. He buttresses this argument by observing that patrons are not typically engaged in the "prevention or suppression of any assault or battery," and by arguing that therefore the exclusion does not exclude patron-on-patron batteries. Id. at 4 n.1. Moreover, he argues that if the general exclusionary language is read as broadly as its text dictates -- that the policy "excludes <u>any</u> coverage for <u>any</u> injuries arising out of <u>any</u>

13

assault or battery (whether committed by employees or nonemployees)" -- then the policy is illusory and conflicts with the policy's commercial general liability section covering bodily injuries due to improper business operations. Id. at 4 n.2. This argument is without merit.

It is true that the exclusion expressly provides that the insurance policy does not cover claims for injuries resulting from assault and batteries instigated by employees of the insured and that several specific examples of exclusion focus on the insured's employees. Nevertheless, Day's argument ignores the plain text indicating that these exclusions are not the exclusion's limit. Not only does the exclusion apply to injuries arising out of an assault and battery caused by negligent hiring and training, but also applies to injuries arising out of an assault and battery caused by "any other negligent action," which by its terms includes negligence in maintaining a safe environment for invitees. Moreover, the exclusion covers "[a]ny claim, demand or 'suit' based on 'assault' or 'battery' . . ., whether caused by or at the instigation or direction of an insured, its 'employees', agents, officers or directors, patrons, or any other person." Exclusion at L-461 (11-07) (emphases added).

The language about "prevention or suppression" of assaults and batteries to which Day points actually works against his

14

argument. He contends that this language militates against applying the exclusion to patron-on-patron battery, but it is clear from context that acts or omissions connected to the prevention or suppression of assaults and batteries are only an example of excluded claims:

> Any claim, demand or "suit" based on "assault" or "battery", <u>or</u> out of any act or omission in connection with the prevention or suppression of any "assault" or "battery", including the use of reasonable force to protect persons or property, whether caused by or at the instigation or direction of an insured, its "employees", agents, officers or directors, patrons, or any other person.

<u>Id.</u> (emphasis added). Moreover, the Underlying Complaint essentially alleges that the Locker Room parties failed to prevent the injury to Day through acts or omissions, and therefore this language clearly excludes Day's claim.

Day's argument that reading the text to mean what it says creates a conflict with the policy's Commercial General Liability Coverage provision is similarly meritless. Day points to two sections of the Commercial General Liability Coverage provision to support his argument that it covers his claim. The first is a general statement that Mt. Vernon Insurance will pay for personal injuries or property damage to which the insurance applies if such injuries or damage occur in the covered location during the policy period:

> We will pay those sums that the insured becomes legally obligated to pay because of "bodily injury" or "property

15

damage" to which this insurance applies. . . . This insurance applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory," and . . . occurs during the policy period . . . .

Policy § I.1.a & b, CG 00 01 10 01, Page 1 of 16. The second simply states that if the insured entity is a business, the individuals who formed that business are covered only with respect to their business operations:

> If you are designated in the Declarations as: . . . A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

Id. § II.c, at CG 00 01 10 01, Page 9 of 16. Reading these sections together, the defendant contends that "[t]he defendant cannot reasonably claim that the 'conduct of your business' language excludes damages for bodily injury proximately caused by the failures of the defendant's business operations, as set forth in the Complaint." Pl.'s Obj. at 5.

The two sections Day cites do not mean what he argues they do and have no relevance to the scope of coverage in the insurance agreement. The first section simply explains the benefits of insurance: the insurance company will pay the legal obligations incurred by the insured if those obligations are covered by the insurance policy. The second section's "conduct of your business" language is not, as Day contends, a blanket

16

statement of coverage for every injury or property damage that occurs in the operation of a business. Rather, it limits the insurance coverage to obligations incurred in the course of conducting business.

Moreover, even if reading those two sections together created an affirmative statement of coverage for premises liability cases, nothing in that coverage conflicts with the exclusion for premises liability claims arising out of assaults and batteries. Such coverage would not be illusory as it would cover, for example, a patron's injuries resulting from an accidental fall caused by negligent maintenance of the premises. The insurance company has simply carved out those injuries that are caused by assaults and batteries, whether instigated by an employee or by another patron. Accordingly, plaintiff's arguments fail.

Additionally, Mt. Vernon Insurance cites many cases in which courts have denied coverage after finding that similar assault and battery exclusion language is not ambiguous. See, e.g., Coleman v. Acceptance Indemnity Ins. Co., 369 F. App'x 595, 596 (5th Cir. 2010) (holding that an insurance policy that "does not cover any claims arising out of Assault and Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of you, your employees or volunteers,

patrons or any other persons" did not cover a premises liability claim against nightclub owners when the decedent was shot as she tried to escape a fight that broke out); Essex Ins. Co. v. Stage 2, Inc., 14 F.3d 1178, 1180 (7th Cir. 1994) (holding that an insurance policy in which "claims, accusations, or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery are not covered" did not cover a suit alleging the breach of a duty of care for failing to protect someone from assault by other patrons); Downtown Norfolk Ent't, Inc. v. Penn-Am. Ins. Co., 660 F. Supp. 2d 669, 675 (E.D. Va. 2008) (holding that negligence claims brought by patron of insured nightclub who was shot and seriously wounded during a concert were not covered by insurance policy due to assault and battery exclusion). Day's only response is a general statement that "[n]one of the defendant's case citations encompass the same facts, allegations, policy language, or arguments as are at issue in this case," and that therefore "[t]he case law is inapposite and does not allow the defendant to re-write its ambiguous policy provisions or correct its illusory coverage language." Pl.'s Obj. at 6 n.3. In fact, the case law cited by Mt. Vernon Insurance is entirely on point, particularly as Day has provided no similarly appropriate citations to buttress his arguments.

Because summary judgment will be granted in favor of Mt. Vernon Insurance against Day, granting Mt. Vernon Insurance's motion for default judgment against the Locker Room parties will not create inconsistent judgments. Personal jurisdiction is proper over the Locker Room parties, as they are all citizens of Virginia. Notice of Removal ¶ 6. They have been properly served with Mt. Vernon Insurance's Counterclaim [Dkt. Nos. 25-29] but have failed to answer or otherwise defend against it. Default judgment will therefore be entered against them.

### III. CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment and Motion for Default Judgment will be GRANTED and final judgment will be entered in favor of defendant Mount Vernon Fire Insurance Company by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 23rd day of January, 2013.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge